UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Marvel Snider, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) 15 CV 4748 |
| | ) Magistrate Judge Iain D. Johnston |
| Danfoss, LLC, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER AND REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR RULE 37(e) SANCTIONS**

Federal Rule of Civil Procedure 37(e) incorporates the long-standing legal principle embodied in the phrase used on basketball courts everyday across the country: "No harm; no foul." Under the particular facts of this case, Defendant's admitted and erroneous destruction of electronically stored information (ESI), which does not appear to be relevant, has not prejudiced Plaintiff. Accordingly, sanctions are not warranted under Rule 37(e).

**I. FACTS**

Plaintiff Marvel Snider (nee Marvel Boisvert) worked for Defendant Danfoss LLC since 1999. In 2013, Plaintiff worked as a quality assurance coordinator for Danfoss. She claims that during this time, for several months, she was sexually harassed by another employee named Curtis White. In March of 2014, Plaintiff informed Susan Blood of the harassment. Ms. Blood was not technically Plaintiff's supervisor but essentially acted in that capacity. Ms. Blood informed a Danfoss

1

human resources representative, Kimberly Kuborn, of the claims of sexual harassment of Plaintiff by Curtis White. Danfoss then conducted an internal investigation, finding that the allegations were supported and suspended Curtis White for two weeks without pay.

About two months later, on about May 20, 2014, Plaintiff was transferred from her position as quality assurance coordinator to an assembler position. Plaintiff viewed this transfer as a demotion and retaliation for her sexual harassment complaint.

On May 28, 2014, on behalf of Plaintiff, an attorney sent Danfoss a preservation letter.[1] The letter foreshadowed legal action.

On about June 15, 2014, Plaintiff left Danfoss' employment.

Pursuant to Danfoss policy, on September 15, 2014 – 90 days after her employment terminated – it deleted Plaintiff's emails.

In about March of 2015, Ms. Blood left Danfoss' employment. And again, pursuant to Danfoss policy, 90 days later, on June 14, 2015, Ms. Blood's emails were deleted.

---

[1] The letter, written by prior counsel, was a classic "preserve all evidence" letter, stating the following: "This letter serves as formal notice of your ongoing legal duty to preserve any and all information relevant to the facts surrounding this claim. Your duty to preserve evidence extends to the following: 1) business records, 2) paper, digital, or electronic files, 3) data generated by and/or stored on your or your client's computers and storage media (e.g., hard disks, floppy disks, backup tapes), 4) any other electronic data, such as: voice mails, text messages, emails, digital/analog audio recordings, 5) any related physical evidence, and 6) any form of video recordings (please prevent the automatic deletion of video footage by preprogrammed deletion cycles)." Dkt. 49-7.

These deletions were not best practices, to put it mildly. The fact that Danfoss is not being sanctioned should in no way be viewed as the Court approving of Danfoss' reckless or careless actions.

On May 29, 2015, unrepresented by counsel, Plaintiff filed this lawsuit.

On December 9, 2015, current counsel filed an appearance for Plaintiff, and on January 5, 2016, filed the First Amended Complaint on behalf of Plaintiff.[2] The case was then transferred from the Eastern Division to the Western Division.

Per this Court's standard practice, within about 30 days of the filing of the amended complaint, on February 17, 2016, the Court entered a case management order. This order cut off fact discovery on October 28, 2016.

Depositions of witnesses began well in advance of the discovery cut-off date. During the depositions, Rick White testified that he was Plaintiff's supervisor and that he decided to transfer Plaintiff from quality assurance coordinator to assembler. Other testimony supported Rick White's testimony. Rick White

---

[2] Although this case was filed before December 1, 2015, neither party has argued that amended Rule 37(e) should not apply and that the previous law should apply. Even if a party would have made that argument, the Court would have applied amended Rule 37(e) in its discretion. For good reason, courts have consistently applied amended Rule 37(e) as to motions filed after December 1, 2015, in cases filed before December 1, 2015. *See, e.g., DiStefano v. Law Offices of Barbara H. Katsos, P.C.*, 11-2893, 2017 U.S. Dist. LEXIS 72137, *8-13 (E.D.N.Y. May, 11, 2017); *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 11 CV 3577, 2017 U.S. Dist. LEXIS 33527, *25-26 (N.D. Ala. Mar. 9, 2017); *Citibank, N.A. v. Super Sayin' Publishing, LLC*, 14 CV 5841, 2017 U.S. Dist. LEXIS 38089, *5-6 (S.D.N.Y. Mar. 1, 2017); *Jenkins v. Woody*, 15 CV 355, 2017 U.S. Dist. LEXIS 9581, *32 (E.D. Va. Jan. 21, 2017). The amendments to Rule 37 regarding ESI improved ESI discovery sanctions motions. The amendments provided uniformity and clarity to a haphazard array of case law. *See* Fed. R. Civ. P. 37(e), Advisory Committee Notes, 2015 Amendments. Additionally, the amendments focused on the harm resulting from the spoliation. *Id.* (emphasizing that efforts to restore or replace lost information through discovery should be proportional to the apparent importance of the lost information). No longer was the ESI spoliation tail wagging the litigation merits dog.

testified that he transferred Plaintiff, in part, because she had conflicts with other employees and problems communicating with other employees, including Ms. Blood. Although Ms. Blood provided Plaintiff her daily assignments, there is no evidence that Ms. Blood was involved in the decision to transfer Plaintiff. And after some attempts, on October 7, 2016, Ms. Blood appeared for her deposition pursuant to a subpoena. Apparently, Ms. Blood suffered from a case of "testimonial amnesia" and was unable to recall a variety of facts, even benign, irrelevant facts.[3] Understandably frustrated, Plaintiff's counsel immediately requested copies of Ms. Blood's and Plaintiff's emails.[4] Obviously, by that time, the emails were deleted.

Between October 7, 2016 and October 12, 2016, the parties exchanged communications regarding the status of the requested emails. On October 27, 2016, the Court extended the fact discovery deadline to allow Danfoss to respond to the supplemental discovery.

Following the disclosure that Ms. Blood's and Plaintiff's emails had been deleted, Danfoss and its counsel agreed to search for and produce emails of other employees; namely, all non-privileged emails between human resources representative Kimberly Kuborn to and from either Ms. Blood and Plaintiff as well as non-privileged emails between Ms. Kuborn and another person employed in

---

[3] To be clear, there is no evidence that defense counsel caused this amnesia. Indeed, it appears defense counsel fulfilled his ethical obligations and attempted to correct faulty testimony. Moreover, there is no evidence that defense counsel was involved in the failure to preserve either Plaintiff's or Ms. Blood's emails.

[4] Although technically the request was untimely – as there were less than 30 days remaining for fact discovery – the timing is irrelevant. Dkt. 39 (entering cut off); Dkt. 47-1 (requesting emails). Had Plaintiff's counsel sent a request for all emails at the very first opportunity, the emails would have already been deleted by Danfoss. Moreover, the preservation letter was received long before then.

human resources. That search required the review of over 22 gigabytes of data and the production of over 400 pages of emails.[5] That search and production did not resolve the issue or Plaintiff's counsel's concern.

On March 13, 2017, Plaintiff filed the current motion seeking sanctions for the destruction of Plaintiff's and Ms. Blood's emails. Dkt. 47. On April 7, 2017, Danfoss responded. And on April 13, 2017, the Court heard arguments on the motion.

During the argument, it became clear that, in the absence of Ms. Blood's and Plaintiff's emails, Plaintiff's counsel was seeking emails to help establish that the proffered reason for Plaintiff's transfer was a pretext. Namely, Plaintiff's counsel was looking for emails to and from Ms. Blood – remember that this issue was teed up because Ms. Blood had great difficulty recalling basic information at her deposition – showing that Plaintiff was performing well, had no conflicts with other employees and was communicating appropriately with other employees. Similarly, Plaintiff's counsel sought these emails to show the lack of complaints about and problems with Plaintiff. In other words, Plaintiff wanted these emails not for what was contained in the emails but what was *not* contained in the emails. Obviously, Plaintiff would also be happy with an email from Rick White stating that Plaintiff should be transferred because she complained about Curtis White's sexual harassment. (Not surprisingly, no such email exists to the Court's knowledge.)

---

[5] To provide a reference for old school attorneys, one gigabyte of emails is over 100,000 pages of documents, assuming there are no attachments, which is a faulty assumption. Doug Austin, eDiscovery Best Practices: The Number of Pages in Each Gigabyte Can Vary Widely, CLOUDNINE July 31, 2012, www.ediscovery.com (visited July 5, 2017).

After the Court questioned Danfoss' counsel, it learned that Rick White's emails to and from Ms. Blood still existed. Accordingly, the Court ordered that Rick White's emails to and from Ms. Blood during the relevant time frame be produced to the Court for an *in camera* inspection. These emails were in addition to the 400 pages of emails Danfoss previously produced to Plaintiff's counsel after it was learned that Ms. Blood's and Plaintiff's emails had been deleted.[6] The search for these emails produced more than 400 additional emails.

The Court has spent a considerable number of hours reviewing the hundreds of responsive emails. Having completed that unenviable task, the Court concludes that those emails do not support Plaintiff's claims. Indeed, some of the emails support Danfoss' theory of the case.[7]

Regardless of this Court's conclusions after the *in camera* inspection, the Court must still address Plaintiff's motion for sanctions.

## II. ISSUE

The issue before this Court is whether, under these particular facts, Danfoss should be sanctioned under Rule 37(e) for its failure to preserve the emails of Ms. Blood and Plaintiff.

---

[6] Danfoss whined a little about producing these additional documents. But Danfoss wisely chose not to throw a tantrum, probably because it knew that it would not have been in this situation had it not deleted Plaintiff's and Ms. Blood's emails.

[7] If any of the emails produced to the Court were not previously produced to Plaintiff and those emails support Danfoss' case, Danfoss is prohibited from using those emails in a summary judgment motion or at trial. Fed. R. Civ. P. 26(a)(1)(ii); Fed. R. Civ. P. 37(c). Danfoss should not be allowed to use these newly discovered emails at this late date, having only searched for and located them pursuant to a Court order after the fact discovery cut off.

## III. AMENDED RULE 37(e)

After December 1, 2015, Rule 37(e) provides the specific – and sole[8] – basis to sanction a party for failing to preserve electronically stored information. Rule 37(e) provides the following:

If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

> (1) upon finding of prejudice to another party from loss of the information, may order measures no great than necessary to cure the prejudice; or
>
> (2) only upon a finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or

---

[8] Plaintiff also sought sanctions under this Court's inherent authority. But the Advisory Committee Notes for the December 1, 2015 amendments make clear that amended Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used." Removing inherent authority from a federal court's quiver to sanction a party for failing to preserve ESI makes sense. The purpose of the amendment was to address the "significantly different standards" that the various federal courts were using. If federal courts could simply fall back onto their inherent authority, the goals of uniformity and standardization would be lost. Accordingly, to the extent Plaintiff seeks sanctions pursuant to this Court's inherent authority, this Court recommends that the motion be denied.

(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Dissecting the rule into its various requirements might be helpful. As will be seen, the amendments to Rule 37(e) limited a court's discretion to impose sanctions. *Jenkins*, 2017 U.S. Dist. LEXIS 9581 at *32.

The rule contains a five-part winnowing process courts must apply before they can even consider imposing sanctions.

1. The information must be ESI. The rule only applies to ESI. Fed. R. Civ. P. 37(e), Advisory Committee Notes, 2015 Amendments ("The new rule applies only to electronically stored information. . .").

2. There must be anticipated or actual litigation. This provision establishes that litigation – anticipated or ongoing – triggers the duty to preserve ESI.

3. Because of anticipated or current litigation, the ESI "should have been preserved." This provision limits the scope of the ESI to be preserved in three ways. Initially, the phrase "should have been preserved" encompasses the concept of the duty to preserve ESI. If there were no duty to preserve the ESI, then it need not have been preserved. Moreover, this provision appears to be based on a prospective standard. Using hindsight to determine that the ESI "should have been preserved" is far too easy. Accordingly, the better interpretation of this provision is that the determination of what ESI "should have been preserved" is viewed at the time litigation is anticipated or ongoing, not when it is discovered that the ESI was lost. And this prospective

standard is from the viewpoint of the party who controls the ESI. *Alabama Aircraft*, 2017 U.S. Dist. LEXIS 33527 at *27. Finally, this provision limits the preservation to only relevant ESI. Curiously, the rule does not use the term "relevant." But the Advisory Committee Notes do. Fed. R. Civ. P. 37(e), Advisory Committee Notes, 2015 Amendments ("Many court decisions hold that potential litigants have a duty to preserve *relevant* information when litigation is reasonably foreseeable. Rule 37(e) is based on this common-law duty; it does not attempt to create a new duty to preserve.") (emphasis added).[9] Of course, limiting sanctions to the failure to preserve relevant ESI makes complete sense on many levels, including the lack of prejudice in the loss of irrelevant ESI and the lack of a need to even produce irrelevant ESI, let alone preserve it. So, not surprisingly, courts have consistently assumed that Rule 37(e) only applies to relevant ESI. *See Storey v. Effingham County*, CV415-149, 2017 U.S. Dist. LEXIS 93147, *13 (S.D. Ga. June 16, 2017); *Eshelman v. Puma Biotechnology, Inc.*, 16 CV 18, 2017 U.S. Dist. LEXIS 87282, *11 (E.D.N.C. June 7, 2017); *Jenkins*, 2017 U.S. Dist. LEXIS 9581 at *34-35.

---

[9] Of course, if the Committee merely intended the phrase "should have been preserved" to mean "relevant" (presumably, "relevance" under Federal Rule of Civil Procedure 26(b)(1), not Federal Rule of Evidence 401), then why didn't the Committee just use that term, which was re-articulated in the same December 1, 2015, amendments, rather than a phrase not previously used? And if "should have been preserved" means "relevant," why would the drafters have used four words when one would suffice? A little help here would have been nice. This Court assumes that the phrase "should have been preserved" was used because it encompasses both the concept of relevance and duty to preserve.

4. The ESI must have been (a) lost because (b) a party failed to take (c) reasonable steps to preserve it.
5. The lost ESI must be unable to be restored or replaced through additional discovery. Although the rule speaks of the lost ESI, more accurately it is the loss of the content of or information contained in the ESI that appears to be the focus. *See* Fed. R. Civ. P. 37(e), Advisory Committee Notes, 2015 Amendments (referring to the "content of the lost information").[10]

If any of these five prerequisites are not met, the court's analysis stops and sanctions cannot be imposed under Rule 37(e).

If, however, these prerequisites are all met, the court looks to the prejudice suffered by the party seeking the ESI. If the court finds that another party was prejudiced from the loss of the ESI, the court may order measures no greater than necessary to cure the prejudice. And if the court finds that the party intended to deprive another party of the use of the ESI (in which case prejudice is presumed, *see* Fed. R. Civ. P. 37(e), Advisory Committee Notes, 2015 Amendments), then the court may impose the harsher sanctions available, including presuming that lost ESI was unfavorable, instructing the jury that it may or must presume the information was unfavorable, or entering default or dismissal.

Obviously, establishing prejudice is tricky business. All involved – the court, the party that failed to preserve, and the seeking party – are at a disadvantage because none know precisely what the lost ESI contained or showed. It is difficult

---

[10] The Court is fully aware that sometimes the ESI itself contains valuable information, such as metadata, and therefore, the ESI itself may be just as critical, if not more so, as the content.

for a court to determine prejudice when the ESI no longer exists and cannot be viewed. Likewise, it is difficult for the party that failed to preserve the ESI to show the absence of prejudice, again because the ESI was lost. Of course, this party is inclined to minimize the prejudice and importance of the lost ESI. And similarly, it is difficult for the party that seeks the ESI to establish prejudice because it does not know what was contained in the ESI. This party is predisposed to over emphasize the prejudice and importance of the lost ESI. The Advisory Committee Notes recognize this dilemma but offer no solutions:

> The rule does not place a burden of proving or disproving prejudice on one party or the other. Determining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair. In other situations, however, the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties. Requiring the party seeking curative measures to prove prejudice may be reasonable in some such situations. The rule leaves judges with discretion to determine how best to assess prejudice in particular cases.

Fed. R. Civ. P. 37(e), Advisory Committee Notes, 2015 Amendments. To evaluate prejudice, the court must have some evidence regarding the particular nature of the missing ESI. *Eshelman*, 2017 U.S. Dist. LEXIS 87282 at *16.

Notably absent from Rule 37(e) is the mention of attorneys' fees as a sanction, either for having to file the motion or for the failure to preserve the ESI. And the Advisory Committee Notes are shockingly silent on the issue as well. In fact, the minutes of the Advisory Committee meetings reflect that those in attendance recognized this absence, but simply chose not to do anything about it. Advisory Committee on Civil Rules, Notes of Conference Call Discovery Subcommittee Advisory Committee on Civil Rules, page 440 (March 4, 2014) www.uscourts.gov/sites/default/files/fr_import/CV2014-04.pdf (last visited July 5, 2017). Significantly, every other provision of Rule 37 that addresses a discovery violation provides for the imposition of attorneys' fees. Fed. R. Civ. P. 37(a)(5)(A),(B);(b)(2)(C);(c)(1)(A),(2);(d)(3);(f).[11] Although the authority to impose attorneys' fees does not appear to have been raised as an issue, at least two courts have imposed attorneys' fees as a sanction for the loss of ESI. *Jenkins*, 2017 U.S. Dist. LEXIS 9581 at *46-47; *DiStefano*, 2017 U.S. Dist. LEXIS 72137 at *85-86. Because the issue of the authority to impose fees under Rule 37(e) was not addressed, this Court finds those decisions of limited value. *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (issues not argued or addressed are not precedential).

## IV. ANALYSIS

Applying Rule 37(e)'s requirements to the facts of this case reveals the following.

---

[11] Conceivably, attorneys' fees might be imposed under Rule 37(c) if ESI were lost despite a court order to preserve it. Fed. R. Civ. P. 37(c) (allowing for attorneys' fees as a discovery sanction when a court order is violated).

12

First, Ms. Blood's and Plaintiff's emails are ESI.

Second, litigation was anticipated. The May 28, 2014 preservation letter clearly put Danfoss on notice that litigation would be forthcoming. *See, e.g., Storey*, 2017 U.S. Dist. LEXIS 93147 at *11 ("The Court cannot fathom a reasonable defendant who would look at those facts and not catch the strong whiff of impending litigation on the breeze.").

Third, there was a duty to preserve the emails. The duty to preserve Plaintiff's emails is obvious. She had threatened to sue. The duty to preserve and the relevance of Ms. Blood's emails is less clear. Throughout Danfoss' response brief, it downplays Ms. Blood's supervision of Plaintiff. The response brief was written without the benefit of the subsequently produced emails. These emails reflect a far more nuanced supervisory relationship than Danfoss portrays. At least some of the emails show that Ms. Blood was communicating with Rick White about Plaintiff's work performance. Danfoss should have known of this supervisory relationship and upon receipt of the preservation letter at least investigated whether the emails should have been preserved rather than robotically applying its 90 day destruction policy. Indeed, as mentioned above, had Danfoss done a proper investigation it may have wanted to use some of the emails it has now disclosed to the Court.

Additionally, based upon a review of the emails from Ms. Blood to Rick White, a reasonable argument could be made that some of Ms. Blood's deleted emails might be relevant to Plaintiff's claims, as the term is used under Rule

13

26(b)(1). But importantly, the possible relevance of Ms. Blood's emails is minimized by the existence of Rick White's emails, as well as the other emails to and from the human resources department that were produced earlier. This fact, while somewhat applicable to the relevance inquiry, is more important to the prejudice element than to the ability to restore or replace the content of the lost ESI through additional discovery. Therefore, the relevance inquiry will be discussed below with the prejudice component.

Fourth, the ESI was lost (no doubt about that) because Danfoss mechanically and blindly followed its 90 day destruction policy in the face of a clear threat of litigation. Danfoss cannot honestly contest this factor with respect to Plaintiff's emails. With respect to Ms. Blood's emails, again Danfoss should have known of the supervisory relationship between Ms. Blood and Plaintiff, as well as the communications between her and Rick White about Plaintiff's work performance. Faced with the May 28, 2014 preservation letter in conjunction with Plaintiff's departure shortly thereafter a reasonable step would be to simply stop the deletion of Ms. Blood's emails. Danfoss has failed to offer any evidence why that action would have been unreasonable either in terms of costs or effort.

Fifth, although the entirety of the ESI cannot be restored or replaced through additional discovery, some of those emails were preserved. In particular, the emails to and from Ms. Blood and Plaintiff to Rick White and the emails to the human resources department were preserved. Moreover, the content of much of that ESI has been provided through the preservation and production of the other emails.

14

Because this factor, like the relevance factor, dovetails into the prejudice component, the Court will address it more fully below.

Although the Court could possibly stop its analysis at this point and deny Plaintiff's motion for failing to meet the fifth prerequisite for sanctions, for the sake of completeness and because the Court must issue a report and recommendation on sanctions issue,[12] it will discuss the lack of prejudice in more detail. Fundamentally, it is the lack of prejudice to Plaintiff that dooms the motion for sanctions.

Critically, the possible prejudice resulting from the deletion of Ms. Blood's and Plaintiff's emails must be put in the proper context. Again, it is important to recall that emails not only to and from the human resources department were preserved and produced, but also that Danfoss preserved and has produced to the Court all of Rick White's emails to and from Ms. Blood and Plaintiff during the relevant time period. With regard to Ms. Blood's and Plaintiff's emails – the only emails the subject of this motion – there are four possible characterizations: (1) Plaintiff's emails could have refuted Rick White's proffered reasons for the transfer; (2) Plaintiff's emails could have supported Rick White's proffered reasons for the transfer; (3) Ms. Blood's emails could have refuted Rick White's proffered reasons for the transfer; and (4) Ms. Blood's emails could have supported Rick White's reasons for the transfer.

---

[12] *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d, 856, 868-69 (7th Cir. 1996) (finding that motions for sanctions under Rule 37 are "dispositive" and require a magistrate judge to issue a report and recommendation).

15

As to Plaintiff's deleted emails, Plaintiff is obviously a party to the suit and has first-hand knowledge of the substance of emails she sent or received. She is a party who was deposed. She could have been asked about her emails at the deposition, and if the case goes to trial, she can testify as to any emails at that time, assuming the testimony is admissible. Accordingly, no prejudice exists as to Plaintiff's emails. Moreover, if emails sent and received by Plaintiff were positive, she may be able to testify about those. If Plaintiff's emails were negative and supported Rick White's proffered bases for transferring her, the deletion of those emails does not harm her; indeed, the deletion of those emails would buoy Plaintiff's case. So, again, the failure to preserve Plaintiff's emails in this case did not prejudice her.

As to Ms. Blood's emails, again, although her emails were purged, Danfoss was able to locate and produce other ESI. As noted above, the emails to the human resources department have already been produced. The emails to and from Rick White were produced to the Court for an *in camera* inspection. As these emails are non-privileged, the Court orders that they be produced to Plaintiff. Plaintiff can then use these emails to attempt to prove the negative; namely, that Rick White and Ms. Blood did not communicate about Plaintiff's alleged shortcomings. Danfoss can certainly continue to assert that Ms. Blood was not involved in the decision to transfer Plaintiff. All that can be hashed out in the inevitable summary judgment filings. And again, there are two possible types of emails that were deleted: those casting a negative light on Plaintiff and those casting a positive light on Plaintiff.

The deletion of the possible negative emails in no way prejudices Plaintiff. And the deletion of the possible positive emails is minimized by the production of the other emails as well as the deposition of Rick White and other witnesses. In the end, regardless of which party bears the burden on the prejudice component, the Court has very little evidence regarding the particular nature of the missing ESI. What ESI exists has been and will be produced, and it is not necessarily helpful to Plaintiff. It is pure speculation that the lost ESI would benefit Plaintiff under these circumstances.

Finally, Plaintiff has presented no evidence that Danfoss destroyed the emails with the intent to deprive Plaintiff of this ESI. Instead, what little evidence presented on the issue of intent indicates that Danfoss acted with a pure heart but empty head. *DiStefano*, 2017 U.S. Dist. LEXIS 72137 at *16.

### V. CONCLUSION

The following is this Court's report and recommendation:

- Plaintiff's motion for sanctions under Rule 37(e) be denied.
- Plaintiff's motion for sanctions, to the extent it relies upon the Court's inherent authority, be denied.
- Danfoss is barred from using any of the emails provided to the Court for its *in camera* inspection in any summary judgment motion or at trial.

This Court's recommendation that Danfoss not be sanctioned for its disturbing actions in deleting Plaintiff's and Ms. Blood's emails should not be

17

viewed as condoning those actions. But under the December 1, 2015 amendments to Rule 37, Rule 37(e) now focuses on the prejudice caused by the failure to preserve ESI. Under these facts, no prejudice has been shown, and consequently, no sanctions are warranted.

Any objection to this Report and Recommendation must be filed by July 28, 2017. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

Entered: July 12, 2017

By:_____
Iain D. Johnston
United States Magistrate Judge