IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Marvel Snider, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 C 4748 |
| | ) | |
| vs. | ) | |
| | ) | |
| Danfoss, LLC, | ) | Judge Philip G. Reinhard |
| | ) | |
| Defendant. | ) | |

## ORDER

For the reasons stated below, defendant's motion [59] for summary judgment is granted. Judgment is entered in favor of defendant and against plaintiff. This case is terminated.

## STATEMENT-OPINION

Plaintiff, Marvel Snider, brings this action against defendant, Danfoss, LLC ("Danfoss"), her former employer, claiming, in her complaint, sexual harassment (Count I), retaliation (Count II) and constructive discharge (Count III). Subject matter jurisdiction is conferred by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Defendant moves [59] for summary judgment[1].

Plaintiff began working for defendant as an Electro-Mechanical Assembler on December 14, 1998. In January 2007, she became a Quality Assurance Coordinator. In June 2012, Rick White became plaintiff's supervisor. Plaintiff initially got along with Rick White, but over time, their working relationship deteriorated. On January 23, 2013, Rick White gave plaintiff an average performance review. On October 21, 2013, plaintiff met with Kimberly Kuborn who worked in defendant's human resources department to discuss the issues plaintiff had with Rick White. Plaintiff complained Rick White told her an employee named Linda was fired because she did her job too well. Plaintiff believed Rick White was trying to intimidate her when he told her this. Plaintiff testified that during her employment with defendant she went to HR about Rick White on several occasions, including emailing HR about obtaining compensation for coming to work at 8:00 p.m. to inspect parts and complaining to HR about not being compensated for "gas money" to travel between two of defendant's buildings.

---

[1] In her memorandum [68] in opposition to defendant's summary judgment motion, plaintiff concedes her sexual harassment claim. Therefore, only the retaliation and constructive discharge claims will be addressed.

1

As a follow-up to her October 21, 2013 meeting with plaintiff, Kuborn met with both plaintiff and Rick White on January 25, 2014. As a result of this meeting, plaintiff began receiving her day-to-day direction from Susan Blood, a quality control engineer. Plaintiff testified that Rick White treated plaintiff like she "didn't even exist", that "he's just not a very nice person" and that she believed he had personal issues with her.

Rick White prepared a performance evaluation of plaintiff dated February 14, 2014 ("February 14 Evaluation"). In that evaluation he stated she "does a very good job completing tasks, as assigned. Very good organizational skills and keeps work area very clean and neat." He also observed that plaintiff "drives an extremely negative work environment for herself and those around her. The predominant thought and communication is how badly she is being treated." The evaluation form includes plaintiff's comment to this statement. Plaintiff commented "I think having a boss that does not communicate with you at all would make a person feel very insecure. I could not drive a negative work environment because I usually work alone. I always have told people that I totally respect this company. I think that the communication between my boss and I is a big problem (there is none). I had to ask a third party to ask him what my increase was last year. I think communication works two ways in this situation. I cannot be judged on what I am not receiving."

Rick White rated her overall performance as Moderate/Low. In the overall performance section of the evaluation, he stated that plaintiff "is very task oriented and does a good job completing required tasks. She is very organized and detail oriented. However, attitude and communication are not meeting acceptable levels. The predominant thought she expresses is she is being singled out to be fired or she is being treated unfairly and not recognized for her job performance." Plaintiff's comment to this was "when you are told by your boss that you are not high on his priority list and now doesn't even communicate with you at all it is all through a third party, I believe that most people would be worried about their job."

In the present potential portion of the evaluation, Rick White checked the box indicating plaintiff should stay in her present position as opposed to the boxes that said "rotate to a position at a higher level, rotate to a position at the same level, rotate to a position at a lower level, or leave the company." The reason he stated for this choice was: "Additional roles beyond current role will require significant improvement in communication skills and a less negative attitude." On March 28, 2014, Rick White met with plaintiff to go over her evaluation.

Shortly thereafter, on April 3, 2014, plaintiff told Susan Blood that plaintiff had received inappropriate instant messages from Curtis White (no relation to Rick White), a quality engineer at defendant. Blood informed Kuborn. Kuborn conducted an investigation. During the investigation, plaintiff provided Kuborn with transcripts of six instant messages from Curtis White dated March 6, 2013, March 22, 2013, July 3, 2013, November 26, 2013, December 23, 2013, and March 28, 2014. On April 23, 2014, Kuborn completed her investigation. Defendant issued Curtis White a final written warning for his actions and suspended him for 10 days without pay.

In early May 2014, Rick White learned that additional workers were needed on the assembly line to help produce D Frame Drives. Plaintiff previously helped produce D Frame Drives when she worked as an Electro-Mechanical Assembler. Rick White proposed to the supervisor of the assembly line, Debbie Graupner, that plaintiff transfer to the assembly line to help produce D Frame Drives. Rick White was aware plaintiff had a good working relationship with Graupner and that plaintiff's prior experience working on D Frame Drives would enable her to quickly transition into her new position. Graupner agreed this transfer made sense. On May 20, 2014, Kuborn and Rick White met with plaintiff, informed her of her transfer, effective May 27, 2014, and told her that her pay would remain the same.[2]

Plaintiff reported to work May 21, 2014, the day after she was informed of the transfer and then stopped coming to work. Plaintiff says she did not work as an Electro-Mechanical Assembler because she could not bring herself to do it. She felt devastated, humiliated, and embarrassed. Instead of reporting for work, plaintiff sent text messages to Graupner, who would have been her direct supervisor following the transfer, informing Graupner that she was not coming into work. In her text messages plaintiff said she was taking a day off work pursuant to the Family Medical Leave Act ("FMLA"). Plaintiff admits her text messages were misleading because she did not have an FMLA certification that covered her absences in May 2014. She also admits she never intended to return to work at defendant. On May 30, 2014, defendant sent plaintiff a letter informing her she did not have an FMLA certification on file with defendant that covered her absences beginning May 23, 2014. On June 5, 2014, plaintiff was issued a verbal warning for violating defendant's attendance policy by accumulating five attendance violations within a rolling twelve-month period between October 23, 2013 and June 3, 2014. On June 12, 2014, plaintiff was issued a written warning for accumulating seven attendance violations within a rolling twelve-month period between October 23, 2013 and June 3, 2014. On June 17, 2014, defendant terminated plaintiff's employment for excessive absenteeism. These write-ups for absenteeism are the only disciplinary write-ups plaintiff ever received while employed by defendant.

To survive summary judgment on a retaliation claim, plaintiff "must produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) the defendants took a materially adverse action against her; and (3) there existed a but-for-causal connection between the two." Nicholson v. City of Peoria, 860 F.3d 520, 523 (7th Cir. 2017). For purposes of the pending motion, defendant admits plaintiff can establish the first two elements. She made a sexual harassment complaint satisfying the first prong and was transferred from her Quality Assurance Coordinator position to a position as an Electro-Mechanical Assembler satisfying the second prong. The only dispute is whether there was a but-for-causal connection between her sexual harassment complaint and her transfer.

---

[2] Kuborn testified in her deposition that she would have had a conversation with Rick White about the sexual harassment allegations "at the point before we decided to go ahead with moving [plaintiff] because it was a risk to move her into another position."

3

Defendant has presented evidence supporting its claim that it transferred plaintiff because her boss, Rick White, was dissatisfied with her negative attitude and problems he had communicating with her and that when he learned of a need for more workers on the D Frame Drive assembly line, on which plaintiff had prior experience, he suggested the transfer which would mean he no longer was her supervisor. Plaintiff agreed she had communication problems with Rick White because, in her view, he refused to communicate with her. These problems were documented to exist prior to plaintiff making her sexual harassment complaint. Specifically, the February 14 Evaluation documented both Rick White's and plaintiff's issues with each other's performance of their respective jobs. While the February 14 Evaluation contained positive assessments of some aspects of plaintiff's work, it noted Rick White's view that for plaintiff to advance in the company would "require significant improvement in communication skills and a less negative attitude." It also shows plaintiff's view that Rick White, not plaintiff, was the cause of their poor communication. Rick White met with plaintiff to go over the February 14 Evaluation on March 28, 2014. Plaintiff did not make her sexual harassment complaint to Susan Blood until April 3, 2014, several days after the March 28, 2014 meeting with Rick White about her evaluation.

A federal court is not a super-personnel department that can second-guess an employer's employment decisions. Boss v. Castro, 816 F.3d 910, 917 (7th Cir. 2016). "It is not the role of the court to determine whether an employer's expectations were fair, prudent, or reasonable," id., or whether its decision was wise or correct. Id. Defendant may have made a poor decision when it decided to transfer plaintiff but defendant was free to make a bad decision so long as the reason for the decision was not retaliation for plaintiff's protected activity.

In support of her claim, plaintiff points to the fact the transfer occurred after the complaint and that Rick White was aware of the complaint when he made the transfer. She points out Rick White never took any action to discipline her for her alleged bad attitude or for any other reason until after the sexual harassment complaint. Rick White did not follow defendant's progressive discipline procedures in dealing with plaintiff but moved directly to transferring/demoting her on the heels of her sexual harassment complaint.[3] She notes that Rick White testified in his deposition that he had limited contact with plaintiff and, therefore, would not have been in a position to know anything about plaintiff's attitude. She contends there were no intervening facts between her complaint and her transfer.

Plaintiff's retaliation claim fails. The dispositive question is "whether a reasonable jury could find a but-for causal link between the protected activities and adverse actions at issue." Burton v. Bd. of Regents, 851 F.3d 690, 697 (7th Cir. 2017). Because defendant "has presented non-retaliatory reasons for [its] conduct, the true question is whether the proffered reasons were pretext for retaliation." Id. "[P]retext involves more than just faulty reasoning or mistaken

---

[3] Defendant's progressive discipline procedures do not appear to be in the record. Plaintiff does not cite to them in her statement of facts. In her brief she cites to Rick White's deposition in which he acknowledges the existence of such a policy, that it would include "an oral, a written, suspension, termination mode" and that it may or may not include a performance improvement plan.

4

judgment on the part of the employer; it is a lie, specifically a phony reason for some action." Id., at 698 (quotation marks and citations omitted). Plaintiff "has not presented sufficient evidence of pretext, and as a result she cannot establish but-for causation." Id.

Plaintiff has no evidence to contradict defendant's claim that when Rick White learned that help was needed on the D Frame Drive assembly line, he saw an opportunity to move plaintiff from under his supervision and place her under the supervision of Graupner with whom plaintiff had a good working relationship and into a job which both he and Graupner believed plaintiff could perform well because she had done it before. All plaintiff can point to is the fact she made her sexual harassment complaint between the time of her evaluation (which set forth Rick White's negative views on her attitude) and the date she was advised of her transfer.

She does not present evidence that suggests Rick White did not first learn in early May of the need on the assembly line. She argues that the fact Rick White had never disciplined her before for her alleged bad attitude and had not, in the present potential portion of the February 14 Evaluation, recommended rotating her to a lower position but, instead, had checked the box indicating plaintiff should stay in her present position, shows defendant did not intend to take any adverse action against her based on her performance prior to her harassment complaint. But, this argument disregards the undisputed evidence that Rick White learned of the need for workers on the D Frame Drive line after the preparation of the February 14 Evaluation and his March 28, 2014 meeting with plaintiff about that evaluation. It is this new information defendant claims led Rick White to propose to Graupner that plaintiff be transferred to the assembly line. Plaintiff has not presented any evidence that this new information was not the impetus for Rick White proposing the transfer. "These are exactly the type of personnel management decision that federal courts do not second-guess." Id. Court intervention is only appropriate where the employer's reason for the action "is without factual basis or is completely unreasonable." Id. (quotation marks and citation omitted). This is not the case here. Plaintiff "has not presented sufficient evidence of pretext, and as a result she cannot establish but-for causation." Id.

Additionally, while there is a closeness in time between her complaint and the decision to transfer, this proximity is not sufficient under the facts. Mere temporal proximity between statutorily protected activity and allegedly retaliatory action rarely is sufficient to create a triable issue. Harper v. C.R. England, Inc., 687 F.3d 297, 308 (7th Cir. 2012). The record shows defendant took swift action against plaintiff's harassing co-worker and severely sanctioned him a month before the transfer. This action against the co-worker as well as Rick White's learning of the need for workers on the D Frame Drive line each occurred after plaintiff's complaint. No evidence suggests defendant viewed plaintiff's complaint negatively.

As to the claimed failure to follow the progressive discipline procedures, all that plaintiff points to in the record to identify those procedures is the reference in her brief to Rick White's deposition testimony discussed above in footnote 3. That testimony makes no reference to a transfer (or demotion) as part of the discipline process – only to a procedure that leads to suspension or termination. Defendant does not appear to have considered the transfer a form of

discipline. And, again, this evidence does nothing to refute defendant's position that it was Rick White's learning of the need for workers on the D Frame Drive line that prompted the transfer.

Plaintiff contends she was constructively discharged by defendant. Plaintiff never reported for work on the assembly line. She was eventually terminated for excessive absenteeism based on her failure to come to work after the transfer. Plaintiff says she did not report for work as an Electro-Mechanical Assembler because she could not bring herself to do it. She felt devastated, humiliated, and embarrassed by this demotion and, thus, was constructively discharged by the transfer.

"[T]o establish constructive discharge, a plaintiff must show that her working conditions, from an objective standpoint, became so intolerable that her resignation qualified as a fitting response. We have found constructive discharge where an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns." Swearnigen-El v. Cook County Sheriff's Dept., 602 F.3d 852, 859 (7th Cir. 2010) (quotation marks and citations omitted).

Plaintiff has not presented any evidence that her working conditions had become objectively intolerable. Her only evidence is that subjectively, the prospect of working again as an Electro-Mechanical Assembler made her feel devastated, humiliated, and embarrassed. There is no evidence at all concerning why an Electro-Mechanical Assembler job would be objectively intolerable. Plaintiff simply did not want to go back to a job from which she had previously advanced. There is no evidence defendant was attempting to communicate to plaintiff that she was going to be terminated or that defendant was trying to get her to quit. There is no evidence defendant wanted anything but for plaintiff to perform the Electro-Mechanical Assembler job in the same satisfactory manner she had performed it before.

For the foregoing reasons, defendant's motion [59] for summary judgment is granted. Judgment is entered in favor of defendant and against plaintiff. This case is terminated.

Date: 1/29/2018                    ENTER:

                                   _Philip G. Reinhard_
                                   United States District Court Judge


                                                    Electronic Notices. (LC)